# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**GEORGE FLINT,**
    **Petitioner,**
v.                                              **Case No. 4:18cv001-RH/CAS**

**JULIE L. JONES, Secretary,**
**Florida Department of Corrections,**
    **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On or about December 28, 2017, Petitioner George Flint, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On June 25, 2018, Respondent filed an answer and exhibits. ECF No. 13. Petitioner has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 12.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

On September 3, 2014, by information filed in Leon County Circuit Court case number 2014CF002753, the State of Florida charged Petitioner George Flint with aggravated assault with a deadly weapon (knife), a third degree felony, contrary to section 784.021(1)(a), Florida Statutes, in connection with events that occurred on or about August 23, 2014. Ex. A at 6-7.[1] Flint proceeded to a jury trial before Judge James O. Shelfer on June 25, 2015. Ex. B. Flint did not testify during the trial. *Id*. at 84-85. The jury returned a verdict finding him guilty as charged. *Id*. at 120-21. The judge adjudicated him guilty and sentenced him to the lowest possible sentence under the guidelines, 58.95 months in prison, with credit for 21 days served. *Id*. at 126-127; Ex. A at 35-43.

Flint appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D15-3258. *See* Exs. C (Initial Brief), D (Answer Brief), E (Reply Brief). On December 8, 2016, the First DCA per curiam affirmed the case without a written opinion. Ex. F; Flint v.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 13.

State, 221 So. 3d 612 (Fla. 1st DCA 2016) (table).

As indicated above, Flint filed a § 2254 petition in this Court on or about December 28, 2017.  ECF No. 1.  He raises two grounds:

(1) "The evidence was legally insufficient to sustain conviction of aggravated assault."  Id. at 3.

(2) "The trial court erred reversibly in denying [Petitioner's] motion for mistrial."  Id. at 4.

Respondent filed an answer, with exhibits.  ECF No. 13.  Flint has not filed a reply, although he was given the opportunity to do so.  See ECF No. 12.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."   *Id*.

## Ground 1:   Sufficiency of Evidence

In his first ground, Petitioner Flint asserts the evidence was legally insufficient to sustain his conviction of aggravated assault.   ECF No. 1 at 3.   Flint presented this claim in state court as the first point in his direct appeal.   *See* Ex. C at i, 11-14.   In particular, Flint argued on appeal that the State "failed to prove either that violence was imminent, because the threat was conditional upon [the victim] not leaving the residence, or

because the [S]tate failed to prove [Flint] had the present ability to carry out the threat, since he did not throw the knife and was not close enough to stab [the victim] with the knife." *Id*. at 14.   In the answer brief, the State argued the point was not preserved for appellate review because defense counsel "did not fully set forth the grounds for . . . his claim or make the specific contention asserted on appeal"; rather, defense counsel made only a "bare bones" motion for judgment of acquittal.   Ex. D at 6.   The State also argued no fundamental error occurred.   *Id*. at 6-7.   In reply, Flint argued the issue was preserved because counsel moved for a judgment of acquittal, which "although [it] could have been more detailed, . . . was sufficient to put the trial court on notice of the deficiencies in the evidence."   Ex. E at 6.   As indicated above, the First DCA affirmed without a written opinion.   The state court's ruling is entitled to deference and review is limited to the record before the state court.   *See* 28 U.S.C. § 2254(d); Cullen, 563 U.S. at 187-88; Richter, 562 U.S. at 99-103; Wright, 278 F.3d at 1255.

As Respondent points out, Flint did not present this ground as a federal claim to the state court.   See ECF No. 13 at 10.   He did not cite any federal law to the state trial and appellate courts, and he presented this

claim in state court as only a matter of state law.   See Ex. B at 80; Ex. C at 11-14; Ex. E at 1-2.   Accordingly, Flint has not exhausted this claim.

Even if considered on the merits, however, this ground fails. Defense counsel moved at trial, after the State rested, for a judgment of acquittal "based on the State not presenting a prima facie case of aggravated assault with a deadly weapon."   Ex. B at 80.   The judge denied the motion.   Id.   The record reflects the State presented sufficient evidence that Flint, while holding a large kitchen knife in his hand, approached the victim, Edmund Miles, threatened to injure him, and ordered Miles out of the residence.

In particular, Lillian Mosely, Miles's sister and Flint's long-time girlfriend, testified at trial that she and Flint had argued while she was on the phone with Miles, and then Miles came over to the residence she shared with Flint and asked where Flint was.   Ex. B at 44; see id. at 56-57. Mosely testified that Flint came "from back in the back, with a knife in his hand."   Id. at 44.   She described it as a "big knife . . . a kitchen knife."   Id. She testified, "He was just holding the knife.   And he said, get the F out of my house."   Id.   Flint was walking toward Miles.   Id. at 54-54.   Miles backed out of the doorway and called the police.   Id. at 45.   She testified

Miles seemed "surprised or whatever," she "wouldn't say afraid." *Id*. She testified she thought the police needed to intervene. *Id*. at 49, 55.

In addition, Miles testified that Mosely let him in the residence, and Flint came out with a knife. *Id*. at 58. Miles testified, "He told me – he told me, man, I'll f--- you up, with a knife." *Id*. Miles testified he then turned around and got out, and Flint "was walking behind me, say he'll f--- I'll f--- you up, man." *Id*. at 59. Miles testified they are friends and "he totally surprised me when he did that." *Id*. at 60. Miles testified, "I usually go down and talk to him and go on back and lay down." *Id*. Miles testified, "He was walking behind me and could have stabbed me." *Id*. Miles testified Flint threatened to stab him. *Id*. at 60, 69. Miles testified Flint appeared to have the ability to stab him. *Id*. at 63, 69. Miles testified he was scared. *Id*. at 69.

The jury found Flint guilty as charged of aggravated assault with a deadly weapon, a third degree felony, contrary to section 784.021(1)(a), Florida Statutes (2013), which provides "[a]n 'aggravated assault' is an assault . . . [w]ith a deadly weapon without intent to kill." Ex. A at 31. Section 784.011(1), Florida Statutes, defines "assault" as "an intentional, unlawful threat by word or act to do violence to the person of another,

coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." "Aggravated assault requires proof that the victim possessed a well-founded fear that violence was imminent" and "[w]here the victim testified, the victim's subjective perception of fear, so long as it is determined to be well-founded, is sufficient to prove the element of fear." L.R. v. State, 698 So. 2d 915, 916 (Fla. 4th DCA 1997).

Based on the testimony described above, the State presented evidence showing that Flint, while holding a large kitchen knife in front of him, came toward Miles and threatened to stab him, with the apparent ability to do so, scaring Miles and causing him to leave and call the police. The evidence was thus sufficient to support a jury finding, beyond a reasonable doubt, that Flint committed aggravated assault with a deadly weapon. *See, e.g.*, Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001) (explaining that, in federal habeas review of sufficiency of state evidence, "[t]he question we ask is very limited: whether after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt" and "[a]lthough each element of the offense but be established beyond a

reasonable doubt . . . the State is not required to rule out every hypothesis except that of the guilt of the defendant" and, further, "federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence"); <u>U.S. v. Herrera</u>, 931 F.2d 761, 763 (11th Cir. 1991) ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.").

Petitioner Flint has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## Ground 2:   Motion for Mistrial

In his second ground, Petitioner Flint argues the state trial court erred in denying his motion for mistrial.   ECF No. 1 at 4.   He argues it was improper for the prosecutor to ask Officer Hatcher if sworn statements made by two witnesses, Miles and Mosely, during his investigation matched as this constituted improper bolstering of their credibility.   *Id*. at 5.

Flint presented this claim in state court has the second point in his direct appeal.  *See* Ex. C at i, 15-19.   In the answer brief, the State asserted defense counsel's objection to the prosecutor's question was sustained before the jury could hear Officer Hatcher's response.   Ex. D at 8.   The State also argued the question actually benefitted Flint because Mr. Miles and Ms. Mosely gave conflicting testimony during the trial and their sworn statements were not admitted into evidence.   Ex. D at 8.   In reply, Flint argued the sole purpose of the question was to bolster the credibility of the state witnesses.   Ex. E at 4.   Flint explains the question was a leading question and therefore suggested its answer.   *Id*.

As with the first ground, as Respondent points out, Flint did not present this ground as a federal claim to the state court.   He did not cite any federal law to the state trial and appellate courts, and he presented this claim in state court as only a matter of state law.   *See* Ex. B at 72-75; Ex. C at 15-19; Ex. E at 3-7.   Accordingly, Flint has not exhausted this claim.

Even if considered on the merits, however, this ground does not warrant habeas relief.   This ground alleges a claim of state law error, specifically a state trial court evidentiary ruling.   "[F]ederal habeas corpus relief does not lie for errors of state law."   <u>Lewis v. Jeffers</u>, 497 U.S. 764,

780 (1990); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir.1983); accord, e.g., McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir.1992).  "Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence."  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir.1983).  "A state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'"  Id.; see Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . . Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)).

If considered in federal habeas, the point raised in Flint's direct

appeal was affirmed by the First DCA without a written opinion.   Ex. C4.

The state court ruling is entitled to deference and review is limited to the

record before the state court.   See 28 U.S.C. § 2254(d); Cullen, 563 U.S.

at 187-88; Richter, 562 U.S. at 99-103; Wright, 278 F.3d at 1255.

A review of the record reflects that the following transpired during the

direct testimony of Gene Hatcher from the Leon County Sheriff's Office:

> Q [by MS. CROCK]:   Now, Mr. Miles was able to tell you what had happened?
>
> A   He did.
>
> Q   And was he able to give you a sworn statement?
>
> A   Ultimately, he did, yes.
>
> Q   And while you were speaking with Mr. Miles, where was Ms. Mosley?
>
> A   She was initially in the residence.
>
> Q   So the two were separated?
>
> A   Yes.
>
> Q   Now, were you eventually able to speak with Ms. Mosley?
>
> A   I was.
>
> Q   And she was able to give you a sworn statement?
>
> A   She did.

Case No. 4:18cv001-RH/CAS

Q   Now, did the statements that you received from both Mr. Miles and Ms. Mosley, did they match up?

MR. MacNAMARA:   Objection, improper bolstering.

THE COURT:   Sustained.

MR. MacNAMARA:   Referring to facts not in evidence.

THE COURT:   Sustained.

MR. MacNAMARA:   Can we have a sidebar, please, Judge?

### AT THE BENCH

MR. MacNAMARA:   Judge, I'm going to make a motion for a mistrial based on the improper bolstering.   I mean, I almost objected when she started referring to sworn statements that are not going to come into evidence.

But to try to bring out the fact that both these statements were made and how accurate they were and how they related to each not only gets into hearsay, but it also asks for basically a law enforcement officer to comment on the credibility of the State's witnesses, which is improper.   I think it rises to the level of a mistrial.

MR. MOOD:   Your Honor, this does not rise to the little [sic] of a mistrial.   I think – Ms. Crock is a Certified Legal Intern.   I think the better way to have asked the question was:   Based on your investigation, do the stories that were given seem to be consistent, which is a normal question to ask.   It goes to the investigation that was conducted, which is important for this jury to hear because an arrest warrant was eventually signed.

THE COURT:   I am going to deny the motion.   It's noted,

but I'm going to deny the motion for a mistrial.

But I would stay away from that question, too, because that would call for a conclusion. If they were matched up or didn't match up is not something that the officer is in a position to testify to.

MR. MacNAMARA: Yes. And I would make a motion in limine for that question not to be asked because that would also be an inappropriate question, not only asking for a conclusion but improperly bolstering the witnesses. I can't imagine –

MR. MOOD: Your Honor –

MR. MacNAMARA: -- I can't imagine a trial where it was asked, and perhaps it wasn't objected to in a previous trial, but I'm moving in limine right now for that not to be asked. That's an inappropriate question.

MR. MOOD: I don't think it's critical to the case at all, but I do reject the notion – If we're going to attack the thoroughness of the investigation or suggest that, you know, people didn't follow up, I think it's important that he – his investigation and what he thought of the evidence is important and what conclusions he took from it.

He had to make – he had to submit a probable cause affidavit for a warrant. It matters what he thought of the evidence and what he examined. And the consistency is big in the determination of probable cause.

MR. MacNAMARA: Now we're invading the province of the jury because probable cause is irrelevant, warrants that were signed or filed are irrelevant in trial.

And, I mean, it's basically – he is saying the whole reason that you're actually not allowed to do it because you're asking for the officer to comment on the evidence. You're invading

the province of the jury.   Basically he wants – he wants the cop to basically say, well, I thought it's a good case and I think he's guilty.

　　　THE COURT:   I agree with Mr. MacNamara.   I don't think that any answer that he would give as to whether or not it matched up would be – one, it would be opinion evidence.   It would be his opinion.   And, two, if you get into it, then you've got to get in what did he say, what did she say.   And we can't go there.   I mean, he wouldn't have an opportunity to say –

　　　MS. CROCK:   Your Honor, we had no intention of going into any specifics about the testimony, just whether or not –

　　　THE COURT:   Don't ask him whether their stories matched up either because that's an opinion that he's not able to give you.

　　　　　　　　　　IN OPEN COURT

BY MS. CROCK:

　　　Q   Now, Deputy Hatcher, that evening, did any other officers arrive on scene?

　　　A   Yes.

　　　Q   And who was that?

　　　A   Deputy Dan Roufa.

　　　Q   And throughout all of this, was the defendant ever seen at the house?

　　　A   No.

　　　Q   Were you ever able to locate him?

>   A   No.
>
>   Q   And did you and Detective Roufa search for the defendant?
>
>   A   We did.
>
>   Q   And were you ever able to locate him?
>
>   A   No.
>
>   MS. CROCK:   No further questions.

Ex. B at 72-76.

Thus, the trial court sustained defense counsel's objection to the question and, although the court denied the motion for mistrial, the court explained counsel for the State should not ask such a question because it calls for a conclusion.   The court also agreed with defense counsel's argument and directed counsel for the State not to "ask him whether their stories matched up."   *Id*. at 75.   The State's question, which prompted the objection, was not answered by the witness and the question was not repeated or even rephrased.

Petitioner Flint has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, these grounds should be

denied.

## Conclusion

Petitioner George Flint is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 19, 2018.

>   S/ Charles A. Stampelos
>   **CHARLES A. STAMPELOS**
>   **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**